**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEMETRIC SIMON** | * | |
| C/o Law Offices of Michael A. Wein, LLC | * | |
| 7843 Belle Point Drive | * | |
| Greenbelt, MD 20770 | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No. |
| | * | |
| **OFFICER KEITH GLADSTONE** | * | **JURY DEMAND** |
| | * | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | * | |
| Individually and as a police officer for | * | |
| BALTIMORE POLICE DEPARTMENT | * | |
| | * | |
| And | * | |
| | * | |
| | * | |
| **OFFICER ROBERT HANKARD** | * | |
| | * | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | * | |
| Individually and as a police officer for | * | |
| BALTIMORE POLICE DEPARTMENT | * | |
| | * | |
| | * | |
| **And** | * | |
| | * | |
| **OFFICER WAYNE JENKINS** | * | |
| | * | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | * | |
| Individually and as a police officer for | * | |
| BALTIMORE POLICE DEPARTMENT | * | |
| | * | |
| **And** | * | |
| | * | |
| **BALTIMORE CITY** | * | |
| **POLICE DEPARTMENT** | * | |
| | * | |

1

601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
                                                   *
**SERVE**                                          *
                                                   *
**Michael Harrison,**                              *
Police Commissioner                                *
601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
                                                   *
**And**                                            *
                                                   *
**OFFICER CARMINE VIGNOLA**                        *
601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
Individually and as a police officer for          *
BALTIMORE POLICE DEPARTMENT                        *
                                                   *
**And**                                            *
                                                   *
**OFFICER BENJAMIN FRIEMAN**                       *
601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
Individually and as a police officer for          *
BALTIMORE POLICE DEPARTMENT                        *
                                                   *
**And**                                            *
                                                   *
**OFFICER RYAN GUINN**                             *
                                                   *
601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
Individually and as a police officer for          *
BALTIMORE POLICE DEPARTMENT                        *
                                                   *
**And**                                            *
                                                   *
**OFFICER DEAN PALMERE**                           *
                                                   *
601 E. Fayette Street                              *
Baltimore, Maryland 21202                          *
Individually and as a police officer for          *
BALTIMORE POLICE DEPARTMENT                        *

2

```
                                              *
And                                           *
                                              *
OFFICER SEAN MILLER                           *
                                              *
601 E. Fayette Street                         *
Baltimore, Maryland 21202                     *
Individually and as a police officer for      *
BALTIMORE POLICE DEPARTMENT                    *
                                              *
```
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff Demetric Simon, by and through his attorneys, Michael Wein, Esquire of the *Law Offices of Michael A. Wein, LLC* and Lawrence Greenberg, Esquire of the *Greenberg Law Offices,* hereby sue the following Defendants: the Baltimore City Police Department ("BPD"), Officer Keith Gladstone, Officer Robert Hankard, Officer Wayne Jenkins, Officer Carmine Vignola, Officer Benjamin Frieman, Officer Ryan Guinn, Officer Dean Palmere, and Officer Sean Miller and states as follows:

## INTRODUCTION

1. In these causes of action, Plaintiff Demetric Simon seeks compensatory damages, punitive damages, attorney's fees, related costs, and other relief, pursuant to 42 U.S.C. §1983 (Violation of Civil Rights under United States Constitution); 42 U.S.C. §1985 (Conspiracy to Violation of Civil Rights under United States Constitution);  Civil Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC § 1961 *et seq.*)(including Conspiracy

3

amongst the participants); 42 U.S.C. Section § 1988 (Reasonable Attorney's Fees and Costs Awarded for Civil Rights Claims); and various State Tort and State Constitutional claims, many of which are also appropriately argued in the Federal claims.

2.  Plaintiff incorporates the facts uncovered and discovered through various comprehensive investigations thus far in this matter, and are now public record. This includes the following, with hyperlinks in blue to direct sources:

   a.   Independent Report and Two-Year Investigation of Gun Trace Task Force (GTTF) Scandal, led by former Department of Justice Inspector General Attorney Michael Bromwich, and the Law Firm of Steptoe & Johnson, available at  https://www.gttfinvestigation.org/ and includes:

      i.   The 660-Page Final Report on "Anatomy of the Gun Trace Task Force Scandal:  Its Origin, Causes, and Consequences," (Issued January 2022), based on public information, non-public information, and interviews conducted, and including specific discussion of Demetric Simon's Civil Rights violations by BPD Officers at Pages xx-xxi, 176-179, 274, 278-279, 390-391, 407, 416-417, 482, A15-18.

      ii.   The 35-Page Executive Summary of the GTTF investigation, causes and many participants.  ("Page ii— "These former BPD officers constituted not a single criminal gang, but instead a shifting constellation of corrupt officers who discovered each

4

other during the course of their careers and committed their

crimes individually, in small groups, and then in larger groups.

Over the course of many years, they victimized vulnerable

Baltimore residents who they trusted would either not complain,

or would not be believed if they did. Until the federal

investigation developed evidence of their criminal activity, the

corrupt officers were correct: most of their carefully selected

victims did not complain, and those who did were virtually never

deemed credible when the allegations were denied by the

officers.")

iii. Presentation by Michael Bromwich, Esquire, with Members of the

Department of Justice and Members of the Baltimore City Police

Department and Baltimore Solicitor's Office, on Consent Decree

and Report Before Maryland Federal District Court Chief Judge

James Breder (January 20, 2022). The transcript at Page 52

discusses the Demetric Simon case in some detail.

Michael Bromwich—"And the next case I want to discuss very
briefly is the Demetric Simon case, that's the 2014 case in which
Jenkins literally drives his car into a suspect, rams his car into the
individual. They come to rest with the front wheel spinning
over the suspect's head. And there is no evidence that this
gentleman Demetric Simon had a gun or had drugs or anything
else.

So what happened is Jenkins calls his friend Keith Gladstone and
says that he needs a gun to plant at the scene of the accident to
justify what Jenkins had done. And that sets into motion a series

of events that ultimately led to criminal charges against Gladstone and Carmine Vignola and Robert Hankard, a case that is still pending in court. But what I wanted to focus on less than the fact that this case and the way that Jenkins used his car was reviewed by the Use-Of-Force Review Board who incredibly viewed this as a justifiable use of force, the use of his vehicle to ram an individual. But it's important to note how the Use-Of-Force Review Board reviewed the case.

We reviewed the transcript -- and the meeting lasted 21 minutes, something that should have lasted a lot more than that -- and the members of the Use-Of-Force Review Board included some of Jenkins' sponsors and patrons and supporters in the Department, Dean Palmere and Sean Miller. Those were people who believed in him, believed in his ability to produce, and protected him at almost every turn. And this is substantial evidence of the lengths to which they were willing to protect him. That is, they participated in really which was a very superficial review of the use of force. And that's the Demetric Simon case.

And that, as I just said, is really the example of the power of productive officers, Jenkins, Gladstone and some others to wield their power in the Department and immunize themselves from any reasonable sanctions. Now, Jenkins was known for his reckless driving. We couldn't even count up the number of vehicle accidents and vehicle accidents not only endanger him, they endanger his colleagues, but most importantly they endanger people in Baltimore. And there was, frequently, no valid reason for the vehicle chases that Jenkins was involved in and certainly no justification for the incredibly high speed with which he drove. But again, another example of the power that Jenkins and Gladstone wielded in the Department.

They were supervised by a lieutenant by the name of Daryl Murphy. And Murphy decided -- it was part of a larger program -- that he wanted his sergeants to meet regularly with a prosecutor from the State's Attorney's Office so that that prosecutor could review and supervise the legal and factual basis for the investigations they were doing and the cases that they were making.

6

And Jenkins and Gladstone did not want a lawyer looking over their shoulders and they told Murphy that they didn't want that to happen and Murphy said, "Well, I want it to continue. I think it's something that is good and positive and productive and helpful." And Jenkins and Gladstone thought otherwise. They went to Sean Miller, who was Murphy's superior, and lo and behold the meetings with the assistant state's attorney were cancelled. Murphy felt so undermined by Jenkins and Gladstone going to Miller and having his decision overruled that he asked for a transfer and left the position as the lieutenant over Jenkins and Gladstone. So, again, another example of the subversion of the supervisions, the subversion of the chain of command in the interest of deference to productive officers. "

b. Maryland General Assembly's 180-Page Report by "Commission to Restore Trust in Police," (Final Report, Dated December 2020, chaired by former Federal District Court of Maryland Judge Alexander Williams, Jr.)

"Beyond the number (14) of officers involved in criminal misconduct, equally troubling is that the officers did not act simply on their own but instead regularly conspired with each other and in groups to commit crimes. Many of the GTTF officers were convicted of engaging in a criminal racketeering conspiracy, and one of the lead defendants, Sgt. Wayne Jenkins, himself described their behavior as a "criminal enterprise." Individually, in pairs, and sometimes in groups, the GTTF officers intentionally planned criminal misconduct, such that even BPD itself in civil litigation has described the GTTF officers' misconduct as a "criminal conspiracy."

The GTTF officers engaged in serious, destructive criminal acts that would undermine any citizen's confidence in the trustworthiness of law enforcement. Instead of carrying out their oaths to protect and serve the community, the GTTF officers preyed upon Baltimore residents, abusing their power as police officers for personal gain. The GTTF officers stole money, assaulted citizens, conducted unlawful searches and seizures, lied in internal documents

and to the judicial system in testimony and affidavits, and illegally planted evidence, resulting in unfair and improper convictions. The GTTF officers' actions led to at least two deaths—one involving a high-speed and illegal chase with false evidence planted, and one involving theft of money from a drug dealer who thereafter was unable to repay a drug-related debt and was killed. Not the least of the officers' crimes was cheating and stealing from the public, by falsely obtaining overtime payments that were not earned.

 In addition to the number of officers involved, the coordinated nature of their actions, and the severity of their crimes, the Commission has found that the misconduct did not occur over a short timeframe but instead continued to occur over a course of many years involving many dozens of incidents. Some of the involved officers were actively engaged in criminal misconduct for several years before they were assigned to the Gun Trace Task Force.

Another upsetting feature of the GTTF scandal is that the misconduct was not committed only by low-level officers, but also by supervisors. Three sergeants are among those who have pleaded guilty. Those individuals were experienced officers who were well-respected by command and presumably promoted into squad leadership roles because of their perceived quality of performance, but in fact, those individuals participated in and led the criminal behavior."

   c.   Transcript of Guilty Plea of Officer Keith Gladstone (*United States v. Gladstone*, No. 1:19-cr-00094-CCB (D. Md. June 3, 2019 (ECF 19).

3.  The illegal stop, search, physical injuries, seizures, false arrest, false imprisonment, and intimidation of Plaintiff Simon, as well as the fabrication of evidence, false statements, and false testimony to support said illegal conduct,

were part of a longstanding pattern and practice of illegal conduct, including illegal stops, searches, seizures, and fabrications and sworn lies. These were also part of a pattern if misconduct, targeted against and done against people in Baltimore, with drug issues and offenses.  This was both planned and by design, as those targeted, faced not only retaliation with little hope of being taken seriously, but potential imprisonment for any outstanding warrants or charges, and thus victims were targeted to avert suspicion and accountability.  This was sufficiently widespread within the BPD to assume the quality of a "custom or usage" of which BPD policymakers had actual or constructive knowledge. The BPD intended that these "customs or usages" continue and/or condoned such behavior by demonstrating deliberate indifference to stopping or correcting them.

4.  BPD, GTTF and/or the Violent Crimes Impact Division ("VCID") and/or earlier iterations of "flex squads" and "Special Enforcement Units" (SETs) (functioning as supposed "elite units" comprised primarily of plainclothes officers given wide latitude to investigate and/or arrest persons suspected of dealing drugs and/or gun violations), were an "enterprise" or an "association in fact enterprise" (with GTTF and/or VCID and/or "flex squads" and/or "SETs" acting at times as a sub-unit enterprise, in coordination with BPD).  They shared all with the same illegal goal of giving the "appearance" of "numbers" and "productivity,"[1] whereas the "ends

---

[1] "Recommendation No. 12: Senior command staff members must always work through the formal chain of command. They must not allow the needs of the moment, statistical productivity, or high regard for particular individuals or units to subvert the chain of command through issuing orders directly to lower-level personnel. BPD agrees with Recommendation #12 and has already implemented this practice. As you outlined in the report: "Close and careful supervision is critical to ensuring that BPD members are effective

justified the means" even if the means were carried out perjuriously, corruptly, and unconstitutionally.  These false appearances were engendered, by allowing both casual corruption and outright corruption and violations of civil rights, though various criminal racketeering actions.[2]  Even if the Baltimore Police Department did not have the "dirty work" done by everyone within the police department, BPD tolerated, condoned, and incentivized these criminal actions by its most aggressive and corrupt employees, servants, and agents, because it benefitted and burnished BPD's own perceived "effectiveness" and led to increased salaries, promotions, and funding.

5. This lawsuit therefore also seeks compensation and relief from the injuries resulting from the Officers' misconduct that was in accord with BPD policies or procedures, condoned by the BPD, and which BPD knew or should have known.

## PARTIES

---

and behave lawfully. That cannot occur if special relationships are created between lower-level members and upper-level commanders that supplant and undermine the chain of command." It is vital that the correct level of supervisor is performing the appropriate tasks. Commanders should not be doing the work of Sergeants, and likewise directives given by Commanders to those at the officer or detective level undermines the credibility of those in the supervisor and manager ranks in between. Going outside the chain of authority can lead to confusion of priorities, which leads to improper action (or inaction) by the unit. Further, direct intervention by an upper level commander undermines the leadership and credibility of the lower ranked supervisor." (From BPD Response to GTTF Report of Michael R. Bromwich, dated January 14, 2022, Page 7-8)

[2] Including but not limited to various violations of State law of robbery, bribery, and extortion, as well as Federal law; including (1) bribery (18 U.S.C. §201), extortion (18 U.S.C. § 873), obstruction of justice (18 U.S.C. §1503), obstruction of criminal investigations (18 U.S.C. §1510), obstruction of State or local law enforcement (18 U.S.C. §1511), tampering with a witness, victim or an informant (18 U.S.C. §1512), and retaliating against a witness, victim or an informant (18 U.S.C. §1513).

6.  Plaintiff Simon hereby incorporates and restates Paragraphs 1 through 5 and further states as follows:

7.  Plaintiff Demetric Simon, after being recently paroled for good behavior and receiving and completing drug treatment, is a resident of Howard County, Maryland. He has authorized as a contact address in this litigation, service upon Plaintiff's counsel, located in Prince George's County, Maryland.

8.  Defendant Baltimore City Police Department (hereinafter "BPD" or "Department") is an agency of the State of Maryland and considered a proper party for suit and liability for Federal and State violations.   BPD employs or has employed each of the individual Defendants in this case and is a "person" within the meaning of 42 U.S.C. §1983.

9.  At all times relevant herein, Defendants Gladstone, Hankard, Jenkins, Vignola, Frieman, Guinn, Palmere, and Miller, ("Officer Defendants") were employees of the BPD, having committed the acts and omissions described herein under color of the law and within the scope of their employment.

10. Defendant Detective Keith Gladstone is a former member of the BPD, and was at all times relevant to this action, employed by and acting under the control and supervision of the Department.  In an indictment unsealed on March 6, 2019, Gladstone has previously been charged with, and later on or about May 13, 2019, plead guilty in Federal Court to, violating Plaintiff Demetric Simon's Civil Rights against 18 U.S.C. §241.  Former Officer Gladstone has not yet been sentenced. He is being sued in both his individual and official capacities.

11. Defendant Robert Hankard is a former member of the BPD, and was at all times relevant to this action, employed by and acting under the control and supervision of the Department.  He has been previously charged with violating Plaintiff Demetric Simon's Civil Rights, against 18 U.S.C. §241.  Former Officer Hankard is presently scheduled for trial in Federal Court related to those charges beginning on or about April 4, 2022. He is being sued in both his individual and official capacities.

12. Defendant Wayne Jenkins is a former member of the BPD, and was at all relevant times employed by and acting under the control and supervision of the Department.  He was a member of the Violent Crimes Impact Division (VCID), and later became officer-in-charge of the Special Enforcement Section of the Division.  Former Officer Jenkins is presently serving a lengthy prison sentence, related to other crimes committed while he was a member of and had supervisory roles in the VCID and Gun Trace Task Force (GTTF).  He was not criminally charged related to his actions *inter alia* of assaulting and running over Plaintiff Simon with his car while chasing him down, and later role in framing an innocent Simon with the planted evidence of the BB Gun and making false police reports and statement of probable cause.  This lead to Plaintiff Simon being imprisoned for least 317 days.  He is being sued in both his individual and official capacities.

13. Defendant Carmine Vignola, is a former member of the BPD, and was at all relevant times employed by and acting under the control and supervision of the Department.   Defendant Vignola later plead guilty to, and was sentenced for his

knowledge and role in framing Plaintiff Simon, including by lying to the Grand Jury about the Civil Rights violations perpetrated against Plaintiff Simon.  He is being sued in both his individual and official capacities.

14. Defendant Brian Frieman is a former member of the BPD and was at all relevant times employed by and acting under the control and supervision of the Department.    He was a former member of the Gun Trace Task Force (GTTF), and at the time Defendant Wayne Jenkins ran onto the sidewalk and ran over Plaintiff Simon on March 26, 2014 sending him to the hospital, was partnered with Officer Jenkins.   Officer Frieman did not see any gun or BB gun being used by Plaintiff Simon, but knowingly permitted his partner Jenkins to fill out a false police report, falsely written in the "first person" to better give the false appearance of "corroboration" of Jenkins' criminal and civil tortious actions, in running over Simon with his car.[3]  He is being sued in both his individual and official capacities.

15. Defendant Ryan Guinn, is a former member of the BPD, and former member of the GTTF, and VCID, who worked previously with Officers Jenkins and

---

[3] As described in the False Police Report and Statement of  Probable Cause—"Detective Sergeant Jenkins then observed Simon holding a dark in color handgun in his right hand. While Simon was running and looking back towards Detective Frieman Detective Sergeant Jenkins believed that I was in great danger or even a chance of possible death [.]  Simon continued refusing commands to stop running as he attempted to elude police.  Simon then ran onto the sidewalk still armed with a handgun.  At this time Detective Sergeant Jenkins who was in great fear for Detective Frieman's life drove into the driveway of 4203 Anntana Avenue and struck Simon with the front of his vehicle.  Simon then fell to the ground still in the yard of 4203 Anntana Avenue.  Detective Sergeant Jenkins then requested a medic to our location to treat Simon. Medic 13 of the Baltimore  City Fire Department responded to the scene.  Simon was transported by ambulance to Bayview Hospital.  Police Officer Hernandez, while canvassing the scene, located a black handgun under a truck in the driveway of 4203 Anntana and notified police dispatch of his discovery.  Investigators responded to the truck and observed a black in color handgun laying under a truck in the driveway of 4203 Anntana."

Gladstone.  On March 16, 2014, Officer Guinn was one of the responding officers to the scene where Plaintiff Simon was struck and awaiting transportation to the hospital.  He spoke with Officer Jenkins at the scene, and according to reporting, suggested Officer Jenkins speak with his lieutenant, and Jenkins then called Officer Gladstone.[4]  Officer Gladstone later arrived, and was the one who appeared to casually announce locating the planted BB gun, nearby.   Yet, Gladstone's presence wasn't officially noted by Officer Guinn as even being there that day. Officer Guinn claimed to later have doubts about various officers' methods, but felt all police officers are permitted to "cut corners" in their jobs.  He is being sued in both his individual and official capacities.

16. Defendant Dean Palmere is a former member of the BPD, who worked there from about 1998 through his retirement in 2018, including various supervisory roles within the BPD including the plainclothes divisions, like the GTTF.  This included since 2013 functioning as Deputy Commissioner overseeing the BPD's Patrol and Operations Bureaus. At all relevant times herein, former Officer Palmere, not only had supervisory responsibility over these divisions which *inter alia,* included Officers Gladstone, Hankard, and Jenkins, but was aware and condoned the constitutional violations by officers in these divisions including the Officer Defendants.  Supervisory Officer Palmere, instead of  taking reasonable steps to stop these violations,   instead assisted with ensued those officers engaged in

---

[4] *See,* Fenton, Justin, <u>We Own this City: A True Story of Crime, Cops, and Corruption</u>,  Random House (2021), pg. 49- 50, 255-256.

corrupt and unconstitutional activities, would continue unabated and  against efforts to hold them accountable. He is being sued in both his individual and official capacities.

17. Defendant Sean Miller is a former member of the BPD, including various supervisory roles within the BPD including the plainclothes divisions, and the GTTF.   At all relevant times herein, former Officer Miller, not only had supervisory responsibility over these divisions which *inter alia,* included Officers Gladstone, Hankard, and Jenkins, but was aware and condoned the constitutional violations by officers in these divisions (including the Officer Defendants). Officer Miller, instead of  taking reasonable steps to stop these violations,  assisted with ensuring those officers would continue unabated, engaging in corrupt and unconstitutional activities, and against efforts to hold them accountable. He is being sued in both his individual and official capacities.

## JURISDICTION AND VENUE

18. Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 17, and further states as follows:

19. This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985 to redress the deprivation under color of law of Plaintiff Simon's rights as secured by the United States Constitution, including the Fourth and Fourteenth Amendments to the United States Constitution.

20. Further action and damages include attorney's fees and costs, under 42 U.S.C.

§1988, including all attorney work done at addressing and ameliorating these civil

rights violations in this matter. [5]

21. Additionally, under 18 U.S.C. § 1961 *et seq.*, Plaintiff Simon sues Defendants for

violations of the Civil Racketeer Influenced and Corrupt Organizations Act (Civil

RICO), including for Conspiracy to Violate Civil RICO.

22. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1341.  This Court also

has supplemental jurisdiction over any state law claims against the Defendants

pursuant to 28 U.S.C. § 1367.

23. Venue is proper under 28 U.S.C. § 1391 (b) because the events arise in this

complaint occurred in this judicial district.

---

[5] This related Civil Rights attorney work includes, but is not limited to three Counsels representing Plaintiff Simon seeking release for Simon from prison to obtain drug treatment relief, and appropriate "equitable credits" for Plaintiff Demetric Simon's 317 days imprisonment.  These 317 days imprisonment on the charges for Simon, were on alleged "Violation of Probation" grounds, after being unable to afford or secure bail. These 317 days, include about three weeks jail time remained imprisoned as a result of the fabricated charges, even *after his charges were nol prossed.*  Additionally, because no "credit" was awarded for this time, and any such credit was opposed by Baltimore State's Attorney Marilyn Mosby's office when sought in a detailed Motion filed in December 2020, (despite it being factually uncontested this was for "convictionless" time served, and legally uncontested under preexisting Maryland law in support), this had the effect of delaying Simon's ability to qualify for parole, on other  charges until quite recently (including the same "Violation of Probation" charge that led to his 10 ½ months imprisonment).

Thus, Simon continued to be adversely affected and suffer damages through the present from these Civil Rights violations.  These more recent actions, were done, despite what's been acknowledged through the present, publicly in arrests, guilty pleas, the Court of Special Appeal's unpublished decision in *Anthony Walker v. Maryland,* NO. 2418, Sept. Term 2019 (Dec. Feb. 9, 2021)(Appellate Court concurring with authority of Baltimore City State's Attorney's Office seeking release of unrelated criminal Defendant Walker arrested by Defendant Hankard, *specifically* due to Hankard's role in violating Demetric Simon's civil rights), and public investigations—namely, Plaintiff Simon, was falsely charged and imprisoned by the Defendants.   The issue of providing proper "equitable credits" to Plaintiff Simon primarily under Maryland Crim. Proc. § 6-218, was recently appealed to the Maryland Court of Special Appeals, as appeal cases No. 2084 and 2085 (Sept. Term 2021).            .

## **FACTUAL SUMMARY**

24. Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 23, particularly the descriptions and hyperlinks included in Paragraph 3, and further states as follows:

25. All of the events and activities described herein occurred in Baltimore City, Maryland.

26. According to Stipulated Facts in his Plea Agreement, in *United States v. Keith Gladstone,* Criminal No. CCB-19-094, while "Gladstone was the officer-in-charge of a Special Enforcement Section (SES) unit assigned to BPD's Western District […] [o]n the evening of March 26, 2014, Gladstone who was on duty [when he] received a call on his cell phone from Sergeant 1 [Wayne Jenkins], who was in a panic." With two other BPD officers [including Robert Hankard and Carmine Vignola], Gladstone was able to locate a realistic looking BB-gun. "Gladstone then drove to the site of D.S.'s [Demetric Simon's] arrest on Anntana Avenue and Bel Air Road in Northeast Baltimore City. Once there, Gladstone exited his vehicle and carried a BB gun to the front yard of the house where D.S. [Demetric Simon] had been run over. Gladstone dropped the BB gun near a pickup truck that was close to the BPD vehicle that had struck [Demetric Simon]."

27. After other officers noticed the fake gun that Gladstone had "planted at the scene of [Demetric Simon's] arrest," various criminal charges were initiated against D.S. related to the "possession, use, and discharge of a gas or pellet gun."

"Sergeant 1 [Jenkins] wrote a false statement of probable cause in the name of Officer 5, [Benjamin Frieman] which [Frieman] agreed to submit in support of those charges.   [Then] [Jenkins] approved the false statement of probable cause as Officer 5's supervisor."

28. As further noted in the Stipulated Facts, Plaintiff Demetric Simon's charges related to his "arrest on March 26, 2014, were disposed of by *nolle prosequi* [about 10 months later], which is a form of dismissal on January 16, 2015."

29. According to Department of Corrections commitment records, despite the *nol pros* being dismissed on January 16, 2015, (with those charges being the only premise upon which the VOP (Violation of Probation) charges were open and extant), Plaintiff Simon remained incarcerated through February 5, 2015 when the VOP was dismissed.

30. As further noted in the Stipulated Facts, at a certain point in January 2018, Officers Gladstone and Vignola "arranged to meet in person.  In order to avoid detection, they arranged the meeting using their wives' cell phones.   […] Gladstone had arranged to meet in the swimming pool to ensure that Vignola did not have a recording device on him.  Once Gladstone and Vignola were in the pool, Vignola asked Gladstone words to the effect of, 'do you have anything to worry about now, you know, since [Jenkins] was arrested, do you have any concerns?' Gladstone responded that the only thing he was worried about was the incident on 'Bel Air Road,' which was a reference to the arrest of [Demetric Simon]."

18

31. "Gladstone told Vignola that if he was brought in for questioning by federal law enforcement or prosecutors who had investigated the GTTF, that [Vignola] should tell them [Vignola] was not there, which both knew was not true.  When [Vignola said he had been seen by another officer at the scene, Gladstone told him to say that they were there for 'scene assessment' or words to that effect, which was also not true because they did not provide any 'scene assessment.' [Vignola] then asked Gladstone, "what about [Hankard] referring to the fact that [Hankard] knew they had obtained the gun from him."   Gladstone Plea, Stipulation of Facts, Paragraphs 4-15.

32. Gladstone then asked Vignola to lie about who had actually obtained the realistic BB Gun [Hankard], used to frame Plaintiff Simon.  This conspiracy was all done as a defense for Officer Jenkins' indefensible actions, to avoid any and all accountability that would interfere with Jenkins' status and role within the GTTF, and avoid (1) administrative consequences for Jenkins including a "use of force" panel, (2) Civil suit consequences from Simon against Jenkins (for the injuries and trauma from being hit by the car recklessly driven by Jenkins for reasons unrelated to probable cause against Simon), and (3) reduce the possibility of further detection and oversight on Jenkins and the rest of GTTF and cronies, for their criminal actions that were already reasonably known by BPD then.

33. Shortly after, a false police report that mirrored a false Statement of Probable Cause was drafted by Jenkins with Officer Frieman's name as "your writer" which as also discussed *supra,* was false in numerous respects.   Officer Jenkins

19

also used the Statement of Probable Cause to lead a search warrant the next day, at Plaintiff Demetric Simon's mother's residence, to give "extra" justification for anything found there.

34. Because of the criminal charges manufactured through the planting of the realistic-looking gun, as part of the Civil Rights Violations (Sec. 1983) and Civil Rights Conspiracy (Sec. 1985), no civil personal injury lawsuits were sought by Plaintiff Simon.  Mr. Simon, at that time, after going to the hospital, was instead of being treated as a victim, was placed under arrest and forced to "recover" while in jail, for 317 days.   Mr. Simon also had to pay for counsel to assist in the criminal charges and "violation of probation" charges initiated in that matter.

35. Plaintiff Simon, remained in prison, throughout at least February 5, 2015, (317 days), as a direct result of the Civil Rights violations committed against him. Most of that was on the holding, related to the Violation of Probation (VOP) charges, from an earlier 2013 arrest on drug charges, which the Defendants used to falsely imprison him from the 2014 charges that are the main subject of the causes of actions herin.  Plaintiff Simon was also financially unable to afford bail on these charges.

36. Until late 2021, Plaintiff Simon had never had drug treatment, despite addictions from increasingly potent drugs, since he was a teenager.  Additional charges related to this addiction were issued in Baltimore in 2016. Irregularities occurred with these most recent charges, such as how Mr. Simon was reasonably promised drug treatment, as part of a plea for an alleged VOP violation (from the same

VOP in the 2014 charges manufactured by the Defendants used to justify, the 317 days false imprisonment), but this never happened, after serving two years.

37. Upon information and belief, Plaintiff Simon was targeted by Defendants Jenkins and Frieman for having previous drug arrests, and/or being on probation. As noted *supra,* as a finding by GTTF Investigator Michael Brumwich, "Over the course of many years, [the GTTF] victimized vulnerable Baltimore residents who they trusted would either not complain, or would not be believed if they did."   *See also,* Forum on Gun Trace Task Force: It's Origins, Causes and Consequences, February 23, 2022, hosted by University of Baltimore Law Center for Criminal Justice Reform (Heather Warnken, Moderator, with Michael Brumwich as Guest Presenter).

38. Upon information and belief, the 2016 charges, prosecution, and plea reluctantly agreed upon by Simon (to avoid much higher potential jail time, but would beneficially result in drug treatment) was done by Defendants in furtherance of the Civil Rights violations admitted to have occurred earlier from the 2014 charges.   The Defendants were aware of their potential criminal and civil exposure from the unplanned 2014 incident, and sought to take every measure and means to ensure Mr. Simon's case will be relegated to a distant memory of the GTTF crew and responsible Defendant Officers.   This will be further examined and explored through full discovery in this case.

39. In a letter dated March 18, 2019, Plaintiff Simon was notified by the United States

Attorney's Office and the United States Department of Justice Victim Notification System, of the charges initiated against Defendant Keith Gladstone, and his status as a "victim or potential victim during the investigation of the above-criminal case."  In a letter dated February 21, 2020, Plaintiff Simon through Plaintiff's Counsel, was similarly notified by the United States Attorney's Office and the United States Department of Justice Victim Notification System, of the federal charges initiated against Defendant Robert Hankard.

40. Until the U.S. Attorney's Office revealed the Gladstone and Hankard Indictments, Plaintiff Simon did not know and could not have known the full extent of when, how, and why he was injured as described herein, as well as begin to know those responsible for the same injuries.

41. As part of the work done in furtherance of the Civil Rights litigation herein, Plaintiff's Counsel Wein assisted Plaintiff's Counsel therein and *Amici* with the legal issues involved with the *Baltimore City Police Dep't v. Potts,* [and *Mayor and City Counsel of Baltimore v. Estate of William James*] 468 Md. 265 (2020) decision, argued before the Maryland Court of Appeals, on now-settled litigation for other victims of the GTTF.  This unanimous appellate decision provided a clear appellate decision the actions by the GTTF Defendants, were within the scope of their employment, and thus the Baltimore City Police Department/Baltimore City was responsible to indemnify their employees taken within the scope of their employment, including for those GTTF Defendants here.

42. In December 2020, Plaintiff's Counsels now also representing Mr. Simon in the criminal cases, sought to help further remedy the Civil Rights violations against Simon, as well as get Mr. Simon his seemingly promised drug treatment relief as part of being released from prison.  A 22-page Memorandum was filed for this purpose by Plaintiff's Counsel, which included getting "equitable credits" of the 317 days imprisonment.    The State, via the State's Attorney's Office in Baltimore, expressed no sympathy or remorse, and filed a 1-page Opposition, with no citations, and did not properly send a copy to Plaintiff's Counsel.    A hearing in the matter before Judge Tanner, (where again, the State asked for all relief to be denied), recently took place on December 22, 2021, and in a decision issued in February 2022, the Court agreed with the State.  The propriety of that decision is presently pending appeal to the Maryland Court of Special Appeals.

43. Due to the timing of matters, because Mr. Simon never received *any credit whatsoever* for this almost 11 months' time awaiting trial (discovered in 2019 to be wholly the result of a conspiracy involving planted gun, between the Defendant Officers of at least Gladstone, Hankard, Jenkins, and Vignola), this delayed Mr. Simon being qualified for parole.   At that time, Mr. Simon had been an exemplary inmate, but this 2021 determination by the State's Attorney, and wrongly claiming to the Circuit Court judge that the Court had nothing to do with the proper Credits, delayed Plaintiff Simon from receiving parole consideration, drug treatment, and potential release for drug treatment.

44. This added insult to injury, as not only had Plaintiff Simon being falsely arrested

and imprisonment, Simon *received additional imprisonment* when he never even got "convictionless" credits that Maryland law and Statute specifies should be granted to the maximum amount possible.  Specific and detailed requests were made by Plaintiff Simon, through counsel, to rectify this aspect of the Civil Rights violations, but were substantively ignored by the Baltimore City States Attorney's Office.  This is even after the same Office, actively sought the release of criminal defendants, who had any of the indicted Defendant Officers involved with their arrest, and cited as their basis for agreement, Plaintiff Demetric Simon's case. *See e.g.,* Ftnt. 5, *supra,* discussing *Walker v. State* appellate decision.  These actions and inactions arose beginning late 2020/early 2021, and as part of the present Complaint against the present co-Defendants, should be considered at the very least, additional damages accruing to Plaintiff Simon.

45. While the State's Attorney for Baltimore City, (which is not a present Defendant in this suit), opposed Plaintiff Simon getting drug treatment under the Health General article, the over-year timetable before a hearing was had, finally made Plaintiff Demetric Simon "parole eligible." Plaintiff Simon's separate request for parole with in-house drug treatment, was granted by the Maryland Department of Parole and Probation in October 2021.   He was released to a drug treatment program in November 2021, that lasted 30 days.  In December 2021, Demetric Simon successfully finished the program, and is living with his family for the past few months.

## CAUSES OF ACTION

### Count I:

**42 U.S.C. Section 1983 – Malicious Prosecution, Malicious Use of Process, Unlawful Search and Seizure, Intimidation, False Arrest, False Imprisonment, Civil Rights Violations, Civil Conspiracy, Aider & Abettor Liability, Retaliation, Supervisory Liability, Failure to Supervise, Negligent Hiring, Negligent Training, Negligent Retention, Unconstitutional Customs and Practices under *Monell*, and Violations of 4th and 14th Amendments to the United States Constitution
(All Defendants, with Exception *Monell* Claim
Only Applies to Defendant Baltimore City Police Department)**

46. Plaintiff Simon hereby incorporates and restates Paragraphs 1 through 45 (including Paragraph 3 and the incorporated hyperlinks), and further states as follows:

47. As described above, Defendant Officers while acting individually, jointly, and/or in concert, under color of law and within the scope of their employment, committed various Civil Rights violations, directly and/or as a matter of willful indifference.

48. Plaintiff suffered injury and damage as a result of his physical injuries, false searches and arrests, and false imprisonment.  These were unlawful and unreasonable because probable cause did not exist to believe that the Plaintiff had committed any criminal acts, and done for retaliatory and intimidation purposes.

49. Plaintiff also suffered the following injuries and damages arising under the United States Constitution.

   a. Violation of constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure;

25

b. Violation of constitutional rights under the Fourteenth Amendment to due process of law, and equal protection of law, as applied to the States.

c. Mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, as well as other direct economic losses in the form of lost wages, and other compensatory damages.

50. The actions of the Defendants violated the clearly established and well-settled federal constitutional rights of the Plaintiff Demetric Simon, including as follows.

a. Freedom from unreasonable searches and seizures of his person and personal property;

b. Freedom from searches and seizures of person and personal property without probable cause;

c. Freedom from prosecution of criminal charges lacking probable cause to support them;

d. Freedom from prosecution of criminal charges as retaliation for and defeat the possibility of administrative review of police misconduct, and scrutiny for a civil lawsuit for personal injury damages, against the tortfeasors and Baltimore City Police Department;

e. By deliberately failing to disclose the foregoing misconduct, the Defendant Officers violated their clearly established duty to report all material exculpatory and impeachment information to prosecutors;

f. Without the Defendant Officers' misconduct, the prosecution of

Demetric Simon could not and would not have been pursued.   This resulted in the unjust and wrongful incarceration of Plaintiff Simon, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

51. Defendant Officers conducted these intrusions in a callous and intimidating manner without any legal justification.  Because it would adversely impact the group of officers charged by BPD with conducting these unconstitutional actions on Baltimore citizens, various policies were adopted and/or condoned, to prevent interference.

    a.   Defendant Officers would seek to use realistic-looking BB-guns, to justify any later challenges to illegal and unconstitutional actions undertaken by the Defendant Officers.

    b.   Defendant Officers, with malicious intent and/or with deliberate indifference, would target those Baltimore City residents with previous criminal records and/or on probation.

    c.   Defendant Officers were permitted to illegally stop, detain, search, and seize persons.

    d.   Defendant Officers were permitted to use fabricated evidence to support unconstitutional stops and seizures, and avoid the disclosure or suppression of exculpatory and/or impeachment evidence in Court.

    e.   Defendant Officers permitted the use of false police reports,

statements of probable cause, and their use in search warrants, to support unconstitutional stops and seizures, as well as avoid the disclosure or suppression of exculpatory and/or impeachment evidence in Court.

52. The Officer Defendants actions were undertaken pursuant to custom and usage and/or policies and practices of the Baltimore Police Department, condoned and/or ratified by policymakers with final policymaking authority. These policies and practices were sufficiently widespread within the BPD to assume the quality of a "custom or usage" of which BPD policymakers had actual or constructive knowledge. The policies and practices described herein were maintained and implemented by the BPD with deliberate indifference to Plaintiff's constitutional rights.

53. Prior to and at the time of the events at issue, the BPD, by and through its final policymakers, maintained a policy, custom, pattern, or practice of failing to adequately supervise, discipline, and train members of its plainclothes units with respect to their constitutional obligations.

54. The misconduct described herein was undertaken with malicious intent and willful indifference to the clearly established constitutional rights of Demetric Simon, and other citizens of Baltimore.

55. Additionally, Defendant Officers who did not directly participate in the illegal and unconstitutional actions of other Defendant Officers, permitted and tolerated "casual

28

corruption" to occur on their watch.    To the extent any Defendant Officers in a supervisory role did not act, they nevertheless had a duty to act, and a reasonable opportunity to prevent this harm but failed to do so.

56. As described above, by their conduct and under color of law, the Defendant Officers, including Defendant Palmere and Defendant Miller, failed to intervene to prevent the violation of Demetric Simon's constitutional rights, even though they had ample opportunity to do so.

57. Defendant Palmere supervised many of the Baltimore City Police Department's plainclothes divisions through their various iterations, including the Defendant Officers.  Defendant Miller, likewise, had supervisory authority including for Officer Defendants, all of whom were working as plainclothes officers at the time of the unconstitutional conduct at issue.  According to the 660-page GTTF Report at Paragraph 3 (a), *supra,* Defendant Miller directly intervened and interceded, when Defendants Jenkins and Gladstone, faced the potential to have members of the Baltimore City State's Attorney's Office, regularly review their conduct, and any incidents involving use of force, and abuse of power.

58.    Defendants Palmere and Miller had actual or constructive knowledge that the Officer Defendants and other members of the plainclothes units were engaged in widespread misconduct over a period of years that posed an unreasonable risk of constitutional injury to Plaintiffs and other citizens of Baltimore.

59.    Despite this knowledge, Defendants Palmere and Miller took no action to prevent or remedy the misconduct by the Officer Defendants and other members of the

plainclothes units. They were deliberately indifferent to the persistent constitutional violations by the Officer Defendants and other plainclothes officers whom they directly supervised. They routinely failed to supervise and discipline the Officer Defendants and his other subordinates, thus allowing the misconduct to continue and thrive.

60.     Additionally, various Officer Defendants, particularly Officers Hankard and Jenkins, were known to have "done things" prior to their interactions on the day of Demetric Simon's being hit by a car driven by Officer Jenkins, and confidently were stated by Mr. Brumwich "shouldn't have been in the police department anymore" by the earlier Police Trial Boards tasked with police officer discipline yet were kept on due to being perceived as a "producer" of gun arrests. *See* [Forum on Gun Trace Task Force: It's Origins, Causes and Consequences, February 23, 2022, hosted by University of Baltimore Law Center for Criminal Justice Reform (Heather Warnken, Moderator, with Michael Brumwich as Guest Presenter), at 48:13](#).

61.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count II**

**42 U.S.C. Section 1985 – Conspiracy— Malicious Prosecution, Malicious Use of Process, Unlawful Search and Seizure, Intimidation, False Arrest, False Imprisonment, Civil Rights Violations, Civil Conspiracy, Aider & Abettor Liability, Retaliation, Supervisory Liability, Failure to Supervise, Negligent Hiring, Negligent Training, Negligent Retention, Unconstitutional Customs and Practices under *Monell*, and Violations of 4ᵗʰ and 14ᵗʰ Amendments to the United States Constitution**
**(All Defendants, with Exception *Monell* Claim**
**Only Applies to Defendant Baltimore City Police Department)**

62.     Plaintiff Simon hereby incorporates and restates Paragraphs 1 through 61 (especially including Paragraph 3 and the incorporated hyperlinks), and further states as follows:

63.     As described above, Defendant Officers acted in concert, and conspired to accomplish an unlawful purpose by unlawful means.

64.     In furtherance of this conspiracy, the Defendant Officers engaged in and facilitated numerous unlawful acts, including, but not limited to, fabricating evidence and committing perjury in statements of probable cause, committing perjury in grand jury proceedings, and were otherwise willful participants in the joint activity.

65.     The misconduct described herein was undertaken with malicious intent and willful indifference to Plaintiff's clearly established constitutional rights.   Defendant Officers' misconduct, particularly with respect to Officers Gladstone, Hankard, Jenkins, and Vignola, who were criminal

prosecuted, obstructed the administration of justice in federal and state courts and was motivated by an attempt to deprive Plaintiff of due process and the equal protection of the laws.

66.   As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

## Count III
### 42. U.S.C. Section 1988-Proceedings in Vindication of Civil Rights

67.   Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 66, and further states as follows:

68.   The actions and activities of Defendant Officers, and Defendant BPD, directly and via conspiracy in violation of the Civil Rights Act of 1871, created a panoply of complicated related legal work, encompassing various state and federal litigation in this matter. All this work was done to fully vindicate Plaintiff Simon's constitutional and tortious injuries created by the Civil Rights violations of Defendants.  This work includes not just the case herein, but related work in the following areas.

a.  Work at assisting counsels tasked with arguing the merits in the *Potts* case, *supra,* Certified to the Maryland Court of Appeals, and their Amici Brief of Interested Parties to the *Potts* case, resulting in the positive decision in *Baltimore City Police Dep't v. Potts,* [and *Mayor and City Counsel of Baltimore v. Estate of William James*] 468 Md. 265 (2020); and

b.  Assistance in getting Plaintiff Demetric Simon in his criminal cases in the Circuit Court for Baltimore City, in cases 113260007 and 116154016, released from custody through previously promised drug treatment relief, credits from the 317 days imprisonment created directly from the Civil Rights violations, (but not credited on the related case of the "Violation of Probation" and ignoring the disclosure it arose from Mr. Simon's actual innocence due to the planned evidence in his case), and the eventually successful request for probation, as part of Mr. Simon getting drug treatment; and

c.  The recently appealed cases, from the decision denying the requested "Equitable Credits" to Mr. Simon, as the pending appeal cases of No. 2084 and 2085 (Sept. Term 2021) in the Maryland Court of Special Appeals.

69.  As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful

indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

70.     As part of vindicating these rights, Plaintiff Demetric Simon and his counsels, seek "reasonable attorneys fees as part of the costs" in the action herein and the above-listed actions.

**Count IV:**
**(Violation of Maryland Declaration of Rights, Article 24)**
**(All Defendants)**

71.     Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 70, and further states as follows:

72.     As discussed and described above, Defendant Officers deprived Plaintiff Simon of the rights, privileges and immunities guaranteed under Article 24 of the Maryland Declaration of Rights, in violation of due process, including by planting and fabricating evidence, false police reports, and false statements of probable case, leading to Plaintiff Simon's wrongful imprisonment for crimes he did not commit, and which Defendant Officers knew or should have known he did not commit.

73.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful

34

indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count V:**
**(Malicious Prosecution)**
**(All Defendants)**

74.     Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 73, and further states as follows:

75.     Defendants instituted criminal proceedings against Plaintiff Demetric Simon, without probable cause and with specific and actual malice towards the Plaintiff.

76.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count VI:**
**(Civil Conspiracy)**
**(All Defendants)**

35

73.     Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 72, and further states as follows:

74.     Defendant Officers of the Baltimore City Police Department, along with Defendants individually, had entered into an agreement to wrongfully arrest, search, detain, and otherwise harass Plaintiff Simon, after he was the victim of the intentional and reckless injury committed by Defendant Jenkins, that would potentially adversely affect Jenkins' job and contribute to the earlier ability for scrutiny that could dismantle the house of cards of the GTTF.

75.     Additional criminal and tortious acts in furtherance of this conspiracy, include the various false arrests, planting of evidence, and false imprisonments of Plaintiff Demetric Simon, as well as violations of Constitutional Rights.

76.     Because of Defendants unlawful and tortious acts, in furtherance of the conspiracy, and as a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count VII:**
**(Malicious Use of Process)**
**(All Defendants)**

77.   Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1

through 76, and further states as follows:

78.   Defendants instituted criminal and further proceedings against Plaintiff Simon,

without probable cause.

79.   These proceedings were instituted against Plaintiffs with malice.

80.   As a direct and proximate result of the tortious actions and constitutional violations

of the Defendants, taken with malicious intent and willful indifference, Plaintiff

Demetric Simon had and continues to have injuries, including but not limited to

loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs

and fees, mental anguish, emotional pain and suffering, humiliation, anxiety,

worry, injury to health, loss of time, and damage to reputation, and other

compensatory damages.

**Count VIII:**
**(Vicarious Liability by Baltimore City Police Department,**
**through *Respondeat Superior*)**

81.   Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through

80, and further states as follows:

82.   At the time of the occurrences which are the subject of the Complaint herein,

Defendant Officers Gladstone, Hankard, Jenkins, Vignola, Frieman, Guinn,

Palmere, and Miller, were the agents, servants, and/or employees of Defendant Baltimore City Police Department.

83.     Thus, Defendant Baltimore City Police Department, is liable for the acts of Defendants Officers under *respondeat superior* and *Baltimore City Police Dep't v. Potts,* [and *Mayor and City Counsel of Baltimore v. Estate of William James*] 468 Md. 265 (2020).

84.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**Count VIII:**
**Civil Racketeer Influenced and Corrupt Organizations Act (Civil RICO) and**
**Conspiracy to Violate Civil RICO,**
**18 USC §§ 1961 *et seq.*)**
**(All Defendants)**

85.     Plaintiff Simon hereby incorporates and restates by reference, Paragraphs 1 through 84, and further states as follows, (especially with the about 1000 pages of Linked Attachments in  Paragraph 3, and the "enterprises" summarized in Paragraph 4) as if fully restated here, and further states:

86.   Jurisdiction is proper in this Court pursuant to 18 U.S.C. §§ 1961 *et seq*.

87.   The BPD, and the individual Defendants associated in fact, collectively and in groups, as separate enterprises engaged in, or enterprises, in fact, engaged in, of the activities which fall under RICO.

88.   Defendants are or were police officers, employed by, and/or associated with the Baltimore City Police Department.

89.   Defendants conducted or participated directly and/or indirectly in the affairs of the Baltimore City Police Department, through a pattern of racketeering activity.

90.   Defendants were associated with the enterprise in fact.

91.   Defendants conducted or participated directly and/or indirectly in the affairs of the enterprise in fact through a pattern of racketeering activity.

92.   The Plaintiff has suffered physical injury to his bodily integrity, false arrest, and false imprisonment, as a result of the pattern of racketeering activity perpetrated by the Defendants.

93.   As noted in the previous paragraphs and cases, and Commissions set up to examine the historical roots and egregiousness of the matter, the Baltimore City Police Department and Defendants have engaged in a crusade, against Plaintiff and others, with scores of predicate acts, involving unlawful arrests, multiple unlawful searches of persons and property, and multiple unlawful seizures of persons. They have

violated due process rights, and civil rights, just to accommodate criminal cases against the Plaintiff and others, and avoid scrutiny.  They also have conspired and aided and abetted in the fabrication of charges without probable cause against the Plaintiff and others.

94.     As noted in the previous paragraphs and causes of actions, this pattern of racketeering activity prospered, and had continued with the enterprise of the Baltimore City Police Department, subgroup "enterprises-in-fact" of the BPD (including the GTTF), the individual Defendants, and involved multiple past and present employees of the BPD, up through at least the 2019 and 2020 criminal indictments unsealed in the Maryland Federal District Court.

95.     As a direct and proximate result of the tortious actions and constitutional violations of the Defendants, taken with malicious intent and willful indifference, Plaintiff Demetric Simon had and continues to have injuries, including but not limited to loss of liberty, physical injury, lost wages, lost time with loved ones, legal costs and fees, mental anguish, emotional pain and suffering, humiliation, anxiety, worry, injury to health, loss of time, and damage to reputation, and other compensatory damages.

**WHEREFORE**, the Plaintiff Demetric Simon, prays for judgment against all of the Defendants named above, both jointly and severally, in the amount of Eight Million Five Hundred Thousand Dollars ($8,500,000.00) for compensatory damages and Eight

Million Five Hundred Thousand Dollars ($8,500,000.00) in punitive damages, plus interest, attorney's fees and all related costs of this suit and related actions to vindicate Civil Rights Violations, including under 42 U.S.C. Section §1988.  Additionally, for the violations of the Civil Racketeer Influenced and Corrupt Organizations Act (Civil RICO), Plaintiff requests treble damages and attorney's fees as a result of Defendants' violations of 18 U.S.C. §1961 *et seq*., plus interest and costs.  Further, Plaintiff requests this Court order any further just and equitable relief that may be appropriate.

### **DEMAND FOR JURY TRIAL**

The Plaintiff Demetric Simon hereby respectfully demands a trial by jury in this case.

Respectfully submitted by,

_____/s/ Michael Wein_____

Michael Wein, Esquire
*Law Offices of Michael A. Wein, LLC*
7843 Belle Point Drive
Greenbelt, Maryland 20770
Bar Number: 15950
(301) 441-1151
Fax-(301) 474-7559
weinlaw@hotmail.com

____/s/_ Lawrence Greenberg_____

Lawrence Greenberg, Esquire
*Greenberg Law Offices*
6 E. Biddle Street
Baltimore, Maryland 21202
Bar Number: 23642
410-539-5250
Fax-410-625-7891
Larry@Greenberglawyers.com